IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) R.C., BY AND THROUGH HER PARENTS AND NEXT FRIENDS CHASE AND SARAH CULVER,<br><br>Plaintiff,<br><br>vs.<br><br>(1) INDEPENDENT SCHOOL DISTRICT NO. 2 OF OSAGE COUNTY, OKLAHOMA A/K/A PAWHUSKA PUBLIC SCHOOLS, AND<br>(2) TORI MADISON, IN HER INDIVIDUAL CAPACITY,<br><br>Defendants. | Case No. CIV-23-478-JFJ |

# COMPLAINT

Plaintiff R.C., by and through her parents and next friends Chase and Sarah Culver, for her claims against Defendants Independent School District No. 2 of Osage County, Oklahoma A/K/A Pawhuska Public Schools and Tori Madison, alleges and states the following:

## THE PARTIES

1. During the relevant times to this case, Plaintiff R.C. ("Plaintiff"), Chase Culver, and Sarah Culver, were and now are residents of and domiciled in Pawhuska, Osage County, Oklahoma, which is located within the Northern District of Oklahoma.

2. Defendant Independent School District No. 2 of Osage County, Oklahoma A/K/A Pawhuska Public Schools ("District") is a political subdivision of the State of Oklahoma with its principal place of business in Pawhuska, Osage County, Oklahoma, which is located within the Northern District of Oklahoma. District operated an education program or activity which received federal financial assistance and is subject to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688.

3. During the relevant times to this case, Defendant Tori Madison ("Madison") was employed by District as a substitute teacher and was acting under color of law. Upon information and belief, Madison is a citizen and domiciliary of the State of Oklahoma and resides within the Northern District of Oklahoma.

**JURISDICTION, AND VENUE**

4. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law, namely 20 U.S.C. § 1681, *et seq.* and 42 U.S.C. § 1983.

5. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy and arise from the same set of operative facts as Plaintiff's federal law claims.

6. This Court has personal jurisdiction over District because it is a political subdivision of the State of Oklahoma.

7. This Court has personal jurisdiction over Madison because she availed herself to, is a citizen of, and is a domiciliary of the State of Oklahoma.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the acts and/or omissions giving rise to this lawsuit occurred in the Northern District of Oklahoma and all of the Defendants reside in the Northern District of Oklahoma.

## FACTUAL ALLEGATIONS

### R.C. and the District's Teachers

9. For the 2022-2023 school year, Plaintiff was a pre-kindergarten student at District's Indian Camp Elementary School located in Pawhuska, Oklahoma.

10. Plaintiff's homeroom teacher for the year was Hunter Bigsoldier ("Bigsoldier").

11. As of September 2022, Bigsoldier was out temporarily on maternity leave.

12. As of September 2022, Plaintiff's long term substitute homeroom teacher working in Bigsoldier's place while on maternity leave was Lindsey Long ("Long"), now known as Lindsey Williams. Upon information and belief, Long was serving as Bigsoldier's long-term substitute for approximately the first two months of the school year.

13. As of August and September 2022, Blayne Shuping was the principal of Indian Camp Elementary and still serves in that role.

### Incidents Involving Other Students by C.C. Before Plaintiff was Assaulted

14. On or around August 26, 2022, C.C. (a pre-K student) climbed under and entered a bathroom stall while B.B. (a pre-K student) was in that bathroom stall during school hours. This incident was reported by Lindsey Bruno (B.B.'s mother) to the District

through Christina Cowan, the pre-K teacher's aide/paraprofessional. When Bruno reported the incident to Cowan, Cowan assured Bruno that she would take care of the situation, given that the students' homeroom teacher was out on maternity leave. Upon information and belief, District had not notified C.C.'s parents of this incident as of early 2023.

15. Also in or around August or September 2022 (but before September 22, 2022), M.F. (a pre-K student), was assaulted by C.C. in the classroom. C.C. attempted to anally penetrate M.F. with a book. Katie Free (M.F.'s mother) reported her concerns to District through Shuping and asked what District would do to keep children safe.

16. Also in or around August or September 2022 (but before September 22, 2022), Long observed that C.C. was consistently spending extra time in the bathroom. This became so consistent and noticeable that Long had to instruct C.C. to "take care of her business and come back to class".

17. Despite these repeated incidents and the behavior of C.C. before September 22, 2022, District did not undertake reasonable corrective measures or appropriate protective action to prevent similar assaults and to protect students such as Plaintiff.

**The Assault of Plaintiff on September 22, 2022**

18. On September 22, 2022, Long was not able to work that particular day and other surrounding days, which required Madison to serve as a substitute teacher.

19. Before being absent from work, Long spoke with Madison to prepare for her absence. Long instructed Madison and/or any other substitute teacher filling in for Long

regarding C.C. Specifically, Long instructed that C.C. must not be permitted to go into the bathroom unsupervised by an adult and provided information regarding C.C.'s prior incidents involving other students, C.C.'s multiple and repeated lengthy bathroom visits, and Long's discussions with C.C. telling C.C. to simply use the bathroom and promptly return to the classroom.

20. Long also left a note for Madison specifically because of C.C.'s behavior, prior assaults of B.B. and M.F., and concern for the safety of students such as Plaintiff.

21. On September 22, 2022, Plaintiff was using the bathroom at school. While Plaintiff was in the bathroom, C.C. came in, crawled under the stall door, and proceeded to sexually assault Plaintiff through anal digital penetration. This was precisely the same bathroom that C.C. had previously sexually assaulted B.B. in on August 26, 2022.

22. Sarah Culver ("Sarah") is Plaintiff's mother and as of September 22, 2022, was employed by District as a kindergarten teacher at Indian Camp Elementary.

23. On September 22, 2022, Sarah was walking to the principal's office at Indian Camp Elementary with one of her students who was potentially sick. While at the office, Sarah noticed that Darian Frye (the Indian Camp Secretary), was with R.C. in the nurse room. Sarah then noticed that Madison was waiting outside of the nurse room.

24. Sarah asked Madison what was going on, and Madison stated that she was not going to come and get Sarah unless she "was certain" there was an incident in the bathroom, but believed that there was an incident between C.C. and R.C. in the bathroom where C.C. climbed under the stall that R.C. was in, touched R.C.'s bottom, and that a second grade student reported to her that "they were doing weird things in there".

25. Frye and R.C. exited the nurse's room and Madison took R.C. back to the classroom. Frye only stated to Sarah that C.C. "touched R.C.'s bottom".

26. Sarah requested that R.C. come back to the principal's office to clarify what exactly happened. Sarah took R.C. into a nearby conference room. R.C. confirmed that C.C. climbed under and into her bathroom stall and sexually assaulted her by pointing at her bottom and stating that C.C. "stuck it in".

27. Sarah had to briefly leave the conference room to regain her composure. Sarah had Nikki Garrett (a Special Education Paraprofessional) sit with R.C. while Sarah collected herself in another room.

28. Sarah then came back into the conference room, where R.C. was hiding under the table afraid. Sarah hugged R.C. and let R.C. know that she was not in trouble and then arranged for R.C. to go back to her classroom.

29. The Pawhuska Police Department was then contacted by the District regarding the incident.

30. Chase Culver ("Chase") is Plaintiff's father. Chase was also contacted by the District on September 22, 2022 at or around 1:30 PM and was told that Sarah needed him at the school. Chase immediately came to Indian Camp Elementary and was then informed of the sexual assault by Frye in the conference room where Sarah was present. During this meeting, Frye confirmed, among other details, that C.C. crawled into R.C.'s bathroom stall, would not allow R.C. to pull her pants up, and sexually assaulted R.C. through anal digital penetration.

31. After Chase and Sarah's discussion with Frye, Shuping arrived, asked Frye to leave the conference room, and write down everything that the students and Madison said about the incident.

32. Chase and Sarah told Shuping what they had heard, during which Shuping generated her own report contemporaneously.

33. Lori Hennesey (Chief of Police for the Pawhuska Police Department) arrived at the school and stated to Shuping that Shuping should not interview the students anymore that day and further instructed Chase and Sarah to Ray of Hope Advocacy Center in Bartlesville for a forensic interview. Chase and Sarah scheduled an interview with Ray of Hope for the following morning (September 23, 2022 at 9:00 AM). Chase left Indian Camp Elementary at or around 2:50 PM and Sarah left later that afternoon.

34. Despite Hennesey's express commands to Shuping, Shuping disregarded Hennesey and continued to interview C.C.

## September 23, 2022

35. On September 23, 2022 at or around 9:00 AM, R.C. participated in a forensic interview at Ray of Hope Advocacy Center in Bartlesville. The Ray of Hope interview team was not pleased with how the District had handled C.C. and the events leading up to the assault of R.C.

36. On September 23, 2022 at or around 11:47 AM, Chase received a text message from Chance Crawford (C.C.'s father) asking about the incident from the day before. After receiving the text message, Chase called Chance to discuss, where it was apparent that

Chance had not been adequately informed by the District of the severity of the situation. Chance also told Chase that the District had called his wife Kadee Crawford and communicated to her the idea that the bathroom incident was not as serious as it really was and otherwise did not provide specific details in order for Kadee or Chance to be fully informed at that time.

### September 24, 2022

37. On September 24, 2022 at or around 4:44 PM, Shuping called and left a voicemail with Jodi Culver (Chase's mother) asking about R.C., Sarah, and Chase. Not long after the voicemail at or around 5:30 PM, Shipping drove to Jodi Culver's home, and wrongfully shared confidential details of the September 22, 2022 assault, and asked about R.C., Sarah, and Chase. At this point, neither Chase nor Sarah had shared full details of the September 22, 2022 with their extended family and had not permitted District to disclose such information to third parties such as members of the general public or other extended family members.

### September 25, 2022

38. On September 25, 2022, R.C. confirmed to Chase and Sarah again that she was violated by C.C. in the manner previously described and that she witnessed C.C. pushing a book into M.F.'s bottom with clothes on.

39. Sarah called Shuping back to discuss how the parties would move forward. Shuping did not provide Sarah adequate information and indicated that she could not discuss the District's ultimate decisions on the matter at that time with Sarah.

**September 26, 2022**

40. On September 26, 2022 at or around 11:16 PM, Chase received a call from Lori Hennesey at the Pawhuska Police Department. During this call, Hennesey told Chase that Ray of Hope personnel were so upset with how the District handled the events leading up and concerning September 22, 2022 that they sent an email to the District Attorney.

41. At or around 2:30 PM, Chase and Sarah met with Shuping at Indian Camp Elementary.

**November 2022**

42. In November 2022, M.F. assaulted B.B. while at school. Lindsey Bruno went back to the school and reported this incident directly to Shuping. While at the school, Bruno also discussed the August 26, 2022 incident involving C.C. and B.B. with Shuping. Bruno voiced her concerns that the string of assaults and incidents were a snowball effect from the beginning of the school year.

**December 2022**

43. In December 2022, Ashley Groom (the P.E. teacher at Indian Camp Elementary), told Jodi Culver that she had concerns about C.C. and had constantly caught C.C. places she

was not supposed to be (including the bathroom) at the school while C.C. was supposed to be supervised by an adult. These concerns predated September 22, 2022.

**April 8, 2023**

44. On April 8, 2023, Chase was getting gas at a Pawhuska gas station when District board member Tom Boone came up to Chase and stated that he would like to apologize, that he did not know the full story, and that there were "more incidents."

45. Boone further stated that "there will be repercussions" and that he "wished he could change the past" and was very sorry for everything that happened to Chase and his family. Chase told Boone that he appreciated the apology but it also did not change the fact that the events occurred to R.C.

46. Boone also made similar apologies to Jake Bruno (father of B.B., who was assaulted by C.C. prior to the September 22, 2022 assault of R.C.).

**Later Assaults**

47. Since September 22, 2022, there have been numerous similar incidents at Indian Camp Elementary, some or all of which included the police being called because they were sexual-related.

**Notice of Tort Claim**

48. Plaintiff caused a Notice of Tort Claim dated February 9, 2023 to be filed with District's current clerk as provided by 51 O.S. § 156(D). Receipt of the Notice of Tort Claim was acknowledged.

49. The Tort Claim was deemed denied by operation of law following the expiration of 90 days without any response or further action from District.

50. This lawsuit is timely filed following District's denial of the Notice of Tort Claim.

**FIRST CAUSE OF ACTION: NEGLIGENCE AGAINST DEFENDANT DISTRICT**

51. Plaintiff incorporates ¶¶1-50 as though fully stated herein.

52. The acts and omissions of District's personnel at issue were within the respective course and scope of their employment, authority, and/or agency on behalf of District.

53. District has a special relationship with students, that includes *in loco parentis*, and have special duties to protect its students such as Plaintiff.

54. District failed in its duties to Plaintiff., by, *inter alia:*

    a. Failing to protect Plaintiff from harm inflicted upon her while she was in the District's control and allowing C.C. to sexually assault Plaintiff despite having direct knowledge that C.C. had sexually assaulted at least one other student in the exact same bathroom previously;

    b. Failing to adequately monitor the bathroom at issue;

    c. Failing to adequately monitor C.C.;

    d. Failing to report, adequately act upon, and investigative the incidents preceding Plaintiff's assault;

    e. Failing to report, adequately act upon, and investigative Plaintiff's assault;

    f. Failing to develop procedures for investigating sexual harassment, correcting the conditions causing sexual harassment, establishing adequate measures to

Case 4:23-cv-00478-JFJ   Document 2 Filed in USDC ND/OK on 11/06/23   Page 12 of 18

provide confidentiality in the complaint process, initiation of appropriate corrective actions, identification and enactment of methods to prevent reoccurrence of the harassment, and a process where the provisions of the policy are disseminated in writing annually to all staff and students;

g. Failing to take sufficient remedial action to correct, eliminate, and/or prevent the recurrence of the offensive and unlawful acts describe herein once District employees perceived, knew, or had reason to believe that students such as Plaintiff were at risk; and

h. Failing to exercise reasonable care to keep the premises of Indian Camp Elementary in a reasonably safe condition for the reception of students.

55. As a direct and proximate result of District's negligence, Plaintiff sustained damages.

### SECOND CAUSE OF ACTION: VIOLATION OF TITLE IX OF THE UNITED STATES EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681, *et seq*. AGAINST DEFENDANT DISTRICT

56. Plaintiff incorporates ¶¶1-55 as though fully stated herein.

57. Title IX provides that "[n]o person…shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

58. Title IX's aims of prohibiting harassment are enforceable against school districts through a private cause of action for monetary damages.

59. The assault suffered by Plaintiff was severe, pervasive, and objectively offensive.

Page **12** of **18**

60. District's appropriate persons (including but not limited to its superintendent, board, Indian Camp principal, teachers, substitute teachers, teachers' aides, and paraprofessionals) could have used their respective authorities to address, institute corrective measures, prevent, and exercise substantial control over the assaults that occurred prior to Plaintiff's assault, over student safety concerns, and over Plaintiff's assault.

61. District's appropriate persons (including but not limited to its superintendent, board, Indian Camp principal, teachers, substitute teachers, teachers' aides, and paraprofessionals) knew of and had actual knowledge of the assaults that occurred prior to Plaintiff's assault, student safety concerns, and Plaintiff's assault. The respective knowledge of each appropriate person is imputable and chargeable to District.

62. Despite their actual knowledge, District's appropriate persons (including but not limited to its superintendent, board, Indian Camp principal, teachers, substitute teachers, teachers' aides, and paraprofessionals), failed to adequately respond to the assaults that occurred prior to Plaintiff's assault, student safety concerns, and Plaintiff's assault.

63. District's appropriate persons (including but not limited to its superintendent, board, Indian Camp principal, teachers, substitute teachers, teachers' aides, and paraprofessionals) were not merely inept, erroneous, ineffective, or negligent, but rather were deliberately indifferent to the rights of Plaintiff.

64. Given District's deliberate indifference through its appropriate persons, Plaintiff was deprived access to the educational benefits and/or opportunities provided by District

and suffered damages by suffering an objectively offensive and unlawful sexual assault on school grounds during school hours.

## THIRD CAUSE OF ACTION: VIOLATIONS OF 42 U.S.C. § 1983 AGAINST DEFENDANTS DISTRICT AND MADISON

65. Plaintiff incorporates ¶¶1-64 as though fully stated herein.

66. Under the Fifth and Fourteenth Amendments, Plaintiff has the right to Due Process and Equal Protection of the Law.

67. At all times herein, it was clearly established that Plaintiff had fundamental rights to physical safety and to be free from the infliction of unnecessary pain.

68. At all times herein, Defendants were state actors acting under the color of state law.

69. Despite knowing of the serious risks posed by C.C. and having information directly from Long regarding the risks posed by C.C. in the bathroom where Plaintiff was assaulted, Defendant Madison displayed deliberate indifference and denied Plaintiff rights to due process and equal protection by, *inter alia*:

    a. Failing to properly monitor C.C.;

    b. Failing to properly monitor Plaintiff; and

    c. Failing to prevent sexual assaults of students during school hours.

70. Defendant Madison's deliberate indifference created the danger faced by Plaintiff or increased Plaintiff's vulnerability to the danger posed by C.C.

71. Defendant Madison put Plaintiff at substantial risk of serious, immediate, and proximate harm.

72. The risks posed to Plaintiff were obvious and known by Madison.

73. Defendant District denied Plaintiff rights to due process and equal protection by, *inter alia*:

    a. Enacting inadequate policies, specifically regarding the reporting of suspected sexual misconduct;

    b. Failing to enact and implement adequate policies concerning sexual abuse of students on campus;

    c. Failing to address, relocate, discipline, and/or remove sexually abusive students;

    d. Failing to remove students from areas occupied by suspected sexual predators or situations suspected to lead to sexual assault;

    e. Failing to investigate C.C.'s conduct and take appropriate action prior to the assault of Plaintiff;

    f. Failing to train Madison, Long, and similar personnel properly;

    g. Failing to report sexual misconduct to law enforcement properly;

    h. Failing to report sexual misconduct to parents/family properly;

    i. Exhibiting deliberate indifference to the sexual misconduct of C.C. and dangerous situations that allowed Plaintiff to be unlawfully assaulted; and

    j. Causing a systemic failure of all policies and processes which should have prevented the assault of Plaintiff.

74. Defendant District has an unconstitutional custom or policy of:

    a. Enacting inadequate policies, specifically regarding the reporting of suspected sexual misconduct;

b. Failing to enact and implement adequate policies concerning sexual abuse of students on campus;

c. Failing to address, relocate, discipline, and/or remove sexually abusive students;

d. Failing to remove students from areas occupied by suspected sexual predators or situations suspected to lead to sexual assault;

e. Failing to investigate and prevent sexual assaults;

f. Failing to train personnel properly regarding sexual misconduct, reporting of sexual misconduct, and monitoring students;

g. Failing to report sexual misconduct to law enforcement properly;

h. Failing to report sexual misconduct to parents/family properly; and

i. Failing to enact policies that require adherence to reporting requirements.

75. Defendant District's custom or policy was demonstrated by the fact that Defendant District received multiple allegations of misconduct and knew that students such as Plaintiff were susceptible to assault yet failed to properly handle such allegations and concerns in order to prevent further harm.

76. Defendant District's policy is attributable to municipal policymakers including, but not limited to, Defendant District's Superintendent and Board of Education.

77. Defendant District's deliberate indifference, systemic failures, inadequate policies, and failure to train resulted in Plaintiff's violation of constitutional rights to due process and equal protection.

78. Defendant District affirmatively acted to create, or increased Plaintiff's exposure and/or vulnerability to, or danger from, sexual assault.

79. Assault of students at an elementary school is a danger to those students.

80. A school environment where children are sexually assaulted is a dangerous environment.

81. Defendant District's Indian Camp Elementary was a dangerous environment for students, including Plaintiff.

82. Plaintiff was a member of a limited and specifically definable group—namely, female minor students.

83. Defendant District created the danger or increased Plaintiff's vulnerability to the danger by ignoring prior instances of sexual misconduct; failing to properly handle and respond to prior instances of sexual misconduct; failing to properly report prior instances of sexual misconduct; and failing to take appropriate measures to protected students such as Plaintiff from sexual assault.

84. Defendant District's conduct put Plaintiff and other similarly situated students at substantial risk of serious, immediate, and proximate harm. That risk included the risk of being sexually assaulted while at school. Indeed, Plaintiff was sexually assaulted by C.C. after Defendant District had notice of C.C.'s prior misconduct and propensity to repeat that prior misconduct with another student.

85. The risk of danger was obvious or known to Defendant District.

86. Defendant District acted recklessly in conscious disregard of the risks that its unlawful conduct created for students such as Plaintiff.

87. Defendant District's conduct shocks the conscience.

## **PRAYER FOR RELIEF**

88. Wherefore, Plaintiff prays for judgment against Defendants as follows:

    a. All available forms of compensatory damages in sum in excess of $75,000.00 and in accordance with the proof at the time of trial;

    b. Punitive damages;

    c. Any and all interest, attorney's fees, and costs provided by law; and

    d. Any such and further relief as the Court deems just and proper, whether it is specifically requested herein or requested at a later date.

Respectfully Submitted:

/s/ Geoffrey A. Tabor
Geoffrey A. Tabor, OBA#32880
geoffrey@wardglasslaw.com
GLASS & TABOR, L.L.P.
1601 N.W. 36th Street
Norman, OK 73072
405.360.9700 (phone)
405.360.7902 (fax)
ATTORNEY FOR PLAINTIFF
JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED