IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| R.C., by and through her parents and next friends CHASE and SARAH CULVER., <br><br> Plaintiff, <br><br> vs. <br><br> INDEPENDENT SCHOOL DISTRICT NO. 2 OF OSAGE COUNTY, OKLAHOMA a/k/a PAWHUSKA PUBLIC SCHOOLS, and TORI MADISON, in her individual capacity, <br><br> Defendants. | Case No. 23-CV-478-JFJ |

## OPINION AND ORDER

Before the Court is Defendants' Amended Partial Motion to Dismiss and Combined Brief in Support, (ECF No. 19), filed by Defendants Pawhuska Public Schools ("District") and Tori Madison ("Madison") (collectively "Defendants"). The parties consented to a magistrate judge presiding over the case. ECF No. 20.

In the partial motion to dismiss, Defendants seek dismissal of all claims against Madison and any claim for punitive damages against District. In response, Plaintiff concedes that Plaintiff does not assert a negligence claim against Madison and does not seek punitive damages against District.

The only remaining issue is whether § 1983 claims against Madison are subject to dismissal. The Court denies the motion to dismiss Plaintiff's § 1983 claim premised on an equal protection violation. The Court grants the motion to dismiss Plaintiff's § 1983 claim premised on a substantive due process violation.

I.   **Factual Background**

This case involves an alleged sexual assault by a four-year old student against another four-year old student in a school bathroom. The following facts alleged in the First Amended Complaint ("FAC") (ECF No. 7) are relevant to the § 1983 claim against Madison.[1] For the 2022-2023 school year, minor Plaintiff R.C. ("Plaintiff") was a pre-kindergarten student at District's Indian Camp Elementary School ("ICES"), which is located in Pawhuska, Oklahoma. Plaintiff's homeroom teacher for the year was Hunter Bigsoldier ("Bigsoldier"). As of September 2022, Bigsoldier was out temporarily on maternity leave. Lindsey Long ("Long") served as Plaintiff's long-term substitute homeroom teacher for approximately the first two months of the school year. Madison, who is the only named individual defendant, was a substitute teacher for Long on the day of the event giving rise to this lawsuit. At relevant times, Blayne Shuping ("Shuping") was the principal of ICES, and she still serves in that role.

A.   **Prior Incidents Involving C.C.**

1.   **Incident Involving B.B. – 8/26/22**

On or around August 26, 2022, C.C., a female pre-k student,[2] climbed under and entered a bathroom stall while B.B., another pre-k student, was in that bathroom stall during school hours. This incident was reported by B.B.'s mother to District by and through Christina Cowan ("Cowan"), the pre-k teacher's aide. Cowan assured B.B.'s mother that she would take care of the situation, given that the students' homeroom teacher was out on maternity leave. District did not notify C.C.'s parents of this incident.

---

[1] The Court has not included all allegations in the FAC, including District's alleged actions and responses to the incidents involving C.C.

[2] At various times, the FAC refers to C.C. as "she," and it appears that C.C. is a female student.

2

### 2. Incident Involving M.F. – August or Early September 2022

On or around August or September 2022, but before September 22, 2022, M.F., another pre-k student, "was assaulted by C.C. in the classroom." ECF No. 7 at ¶ 15. Specifically, C.C. "attempted to anally penetrate M.F. with a book." *Id.* M.F.'s mother reported the incident to District by contacting Shuping and inquired what District would do to keep children safe.

### 3. C.C.'s Excessive Time in Bathroom – August or Early September 2022

On or around August or September 2022, but before September 22, 2022, Long observed that C.C. was consistently spending extra time in the bathroom. This became so consistent and noticeable that Long instructed C.C. to quickly take care of her business and return to class.

### B. Instructions Given by Long to Madison

On September 22, 2022, Madison served as a temporary substitute teacher for Long. Before being absent from work, Long spoke with Madison and gave Madison specific instructions regarding C.C. Long instructed Madison that C.C. must not be permitted to go the bathroom unsupervised by an adult. Long informed Madison of the reason for this rule – namely, the two prior incidents involving C.C. and other pre-k students, and C.C.'s lengthy bathroom visits. *See* ECF No. 7 at ¶ 19. Long also left a written note for Madison "specifically because of C.C.'s behavior, prior assaults of B.B. and M.F., and concern for the safety of students such as Plaintiff." ECF No. 7 at ¶ 20 (emphasis added). The FAC does not specify what language Long used in the written note.

### C. Incident Involving Plaintiff - 9/22/22

On September 22, 2022, Plaintiff, a female pre-k student,[3] was using the bathroom at school. While Plaintiff was in a bathroom stall, C.C. "crawled under the stall door and sexually

---

[3] At various times, the FAC refers to Plaintiff as "she," and it appears that Plaintiff is a female student.

assaulted Plaintiff through anal digital penetration." ECF No. 7 at ¶ 21. According to the FAC, this occurred in the "same bathroom that C.C. had previously *sexually* assaulted B.B. in on August 26, 2022." ECF No. 7 ¶ 21 (emphasis added).[4]

Sarah Culver ("Sarah") is Plaintiff's mother. At the time of this incident, Sarah was employed by District as a kindergarten teacher at ICES. On September 22, 2022, Sarah was walking to the principal's office with one of her students who was potentially sick. While at the office, Sarah noticed that Darian Frye, the ICES secretary, was with Plaintiff in the nurse's room. Sarah noticed that Madison was waiting outside the nurse's room, and Sarah asked Madison what was going on. Madison told Sarah she was waiting to get her until she "was certain" an incident occurred, but that she believed an incident occurred between Plaintiff and C.C. in the bathroom. Madison told Sarah she believed C.C. climbed under Plaintiff's stall and touched Plaintiff's bottom. Madison told Sarah that a second-grade student reported to Madison that "they were doing weird things in there," which prompted Madison to take Plaintiff to the office. ECF No. 7 at ¶ 24.

Frye and Plaintiff exited the nurse's room, and Madison took Plaintiff back to the classroom. Frye told Sarah that C.C. touched Plaintiff's bottom. Sarah requested that Plaintiff be brought back to the principal's office to clarify what happened. Sarah took Plaintiff into a nearby conference room. Plaintiff confirmed to Sarah that C.C. climbed under and into her bathroom stall. Plaintiff pointed at her bottom and stated that C.C. "stuck it in." ECF No. 7 at ¶ 26. Based on other allegations, Plaintiff's use of "it" apparently referred to C.C.'s finger. *See* ECF No. 7 at ¶ 21 (alleging digital penetration by C.C.).

---

[4] Plaintiff characterizes the 8/26/22 incident involving B.B. as a *sexual* assault. In the factual section describing the 8/26/22 incident, Plaintiff alleges that C.C. crawled under B.B.'s bathroom stall but does not allege any touching. ECF No. 7 ¶ 14. In resolving the motion to dismiss, the Court analyzes the factual allegations regarding the 8/26/22 incident and not any labels assigned to the facts in the FAC.

4

### D. Section 1983 Claim Against Madison

On May 31, 2024, Plaintiff, by and through her parents, filed this lawsuit against District and Madison. Plaintiff asserts a claim under 42 U.S.C. § 1983 against Madison based on Madison's violations of Plaintiff's constitutional rights. Plaintiff alleges:

> Despite knowing of the serious risks posed by C.C. and having information directly from Long regarding the risks posed by C.C. in the bathroom where Plaintiff was assaulted, Madison displayed deliberate indifference and denied Plaintiff rights to due process and equal protection by, inter alia: failing to properly monitor C.C.; failing to properly monitor Plaintiff; and failing to prevent sexual assaults of students during school hours. Defendant Madison's deliberate indifference created the danger faced by Plaintiff or increased Plaintiff's vulnerability to the danger posed by C.C. Defendant Madison put Plaintiff at substantial risk of serious, immediate, and proximate harm, and that such risks posed to Plaintiff were obvious and known by Madison.

*Id.* at ¶¶ 60-63.

Based on these allegations, Plaintiff asserts two theories of § 1983 liability arising under the Fourteenth Amendment to the U.S. Constitution. First, Plaintiff alleges that Madison, a state actor, deprived Plaintiff of equal protection of the laws based on Madison's deliberate indifference to known sexual harassment by C.C. ("equal protection claim"), *see Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1251 (10th Cir. 1999) (recognizing equal protection claim where state actor "consciously acquiesce[es] in sexually harassing conduct by a non-state actor over whom the state actor has authority"). Second, Plaintiff alleges that Madison, a state actor, deprived Plaintiff of her substantive due process rights to life, liberty, or property by creating and/or increasing Plaintiff's vulnerability to an act of private violence – namely, being sexually assaulted by C.C. ("substantive due process claim"), *see Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 922 (10th Cir. 2012) (recognizing substantive due process claim where state actor affirmatively acts to create or increase a plaintiff's vulnerability to danger from private violence).

### E. Madison's Assertion of Qualified Immunity

Defendants seek dismissal of the § 1983 claim against Madison pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argue Madison is entitled to qualified immunity from suit because (1) Plaintiff failed to sufficiently allege that Madison violated her equal protection or substantive due process rights; and (2) if she did violate any constitutional rights, such rights were not clearly established at the time of the violations.

## II. General Legal Standards – Qualified Immunity and Rule 12(b)(6)

Title 42 U.S.C. § 1983 provides in part that "[e]very person who, under color of any statute . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." When government defendants acting under color of law are sued under § 1983 in their individual capacities, they enjoy a qualified immunity from suit. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). Specifically, "government officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (cleaned up). Qualified immunity "is an immunity from suit rather than a mere defense to liability," and "it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 1161.

When a defendant asserts qualified immunity at the Rule 12(b)(6) stage, "the burden shifts to the plaintiff who must allege facts sufficient to show (assuming they are true) that: (1) the defendant plausibly violated plaintiff's constitutional rights; and (2) the constitutional rights alleged to have been violated were clearly established at the time." *Est. of Israel by & through Russell v. City & Cty. of Denver, Colo.*, 643 F. Supp. 3d 1221, 1228 (D. Colo. 2022). In conducting this analysis, "all well-pleaded factual allegations in the complaint are accepted as true and viewed

in the light most favorable to the nonmoving party." *Brown*, 662 F.3d at 1162 (cleaned up).  A court must then determine if these accepted facts state a "plausible" claim for relief:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.*  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* (cleaned up and emphasis added).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

**III.     Equal Protection Claim – Deliberate Indifference to Known Sexual Harassment**

Plaintiff has alleged facts sufficient to show, assuming they are true, that (1) Madison plausibly violated plaintiff's constitutional rights; and (2) the constitutional rights allegedly violated were clearly established at the time of the violation.  Madison is therefore not entitled to qualified immunity at this stage of the proceeding.

**A.     Constitutional Violation**

The Fourteenth Amendment prohibits a State from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  In the context of student-on-student sexual harassment in a school setting, a governmental official or supervisory employee "may be held [individually] liable under section 1983 upon a showing of deliberate indifference to known sexual harassment." *Murrell*, 186 F.3d at 1250.  Even where the "primary conduct" is committed by a student, the Tenth Circuit recognizes the "possibility of state action where a supervisor participates in or consciously acquiesces in sexual harassment" by a third party.

7

*Id.* Liability must be based on a deliberate deprivation of a constitutional right by the state actor and not mere negligence. *Id.* In the context of a motion to dismiss, a plaintiff must "state facts sufficient to allege the individual defendant "actually knew of and acquiesced in [the harasser's] behavior." *Id.* At least one way an individual state actor "acquiesces" to the harasser's behavior is "refusing to reasonably respond to it." *Id.*

In their motion to dismiss, Defendants argue: "The only allegations against Madison are that she 'failed to properly monitor' [Plaintiff] and C.C. and thereby failed to prevent the alleged incident in the bathroom from occurring, i.e., that Madison was allegedly *negligent* in her supervision of [the] pre-K class." ECF No. 19 at 9 (emphasis added). Defendants further contend, in their reply brief, that prior incidents were insufficient to provide notice of sexual harassment by C.C. ECF No. 25 at 3. Conversely, Plaintiff argues: "By allowing C.C. to go to the bathroom unsupervised while Plaintiff was in the bathroom . . . Madison acquiesced in C.C.'s conduct by 'refusing to reasonably respond' to the known prior threats and specific safety instructions concerning C.C." ECF No. 22 at 7.

Read collectively, the allegations support the following reasonable factual findings or inferences. Madison exercised supervisory control over C.C.'s bathroom attendance and was expected to grant or deny her permission to attend the bathroom. Long informed Madison of C.C.'s prior inappropriate conduct at school. That conduct consisted of "anal penetration" with a book in the classroom, crawling under a bathroom stall and viewing another student, and excessive bathroom lingering. The prior incidents involving other students were reported by parents to school officials and ultimately communicated to Long. Long developed instructions to prevent harm flowing from C.C.'s reported behavior. Most relevant here, Long instructed Madison to prohibit C.C. from going to the bathroom without adult supervision. Long explained to Madison

8

why adult supervision was necessary in the context of prior inappropriate behavior by C.C.  C.C. ended up in the bathroom with Plaintiff unsupervised, and C.C. sexually assaulted Plaintiff.

These facts state a plausible claim of Madison's knowledge and deliberate indifference.  As to knowledge, Madison allegedly knew about an "anal penetration" incident in the classroom, a "crawling under stall" incident in the bathroom, and that C.C. was spending excessive time in the bathroom.  Madison also knew about a rule regarding bathroom attendance that applied only to C.C.  Viewed together, these allegations could support a claim of actual knowledge of sexually harassing conduct directed toward other students by C.C. while in the bathroom.  They also support a finding that at least one known risk presented by C.C. in the bathroom was unwanted viewing and/or touching of other students.

As to deliberate indifference, Madison allegedly acquiesced in the sexual harassment by allowing C.C. to attend the bathroom unattended, thereby failing to monitor C.C. in the bathroom.  Because Madison's actions were contrary to express instructions from Long, her actions could be deemed an unreasonable refusal to respond to known harassment.  At the pleading stage, neither Plaintiff nor her parents can know precisely what Madison did or failed to do prior to C.C. ending up in the bathroom unattended.   However, the alleged facts support inferences that, if proven, could be deemed more than mere negligence or inaction by Madison.  Whether phrased as "failure to monitor" C.C., as alleged in the FAC, or "allowing C.C. to attend the bathroom unmonitored," as argued in Plaintiff's response brief, Madison's alleged conduct sufficiently states a claim of deliberate indifference.  *See Hart for J.M. v. New Mexico Sch. for the Deaf, No. CV 08-896 JCH-RLP*, 2009 WL 10706995, at \*5 (D.N.M. Sept. 30, 2009) (finding that reasonableness of principal's response to a sexual assault was not "incontrovertibly apparent" from the complaint

9

and permitting claim to proceed to summary judgment, even where there was no allegation of an active cover up or other conduct similar to that alleged in *Murrell*).[5]

Defendant's reliance on *Kramer v. Wasatch County Sheriff's Office*, 743 F.3d 726, 758 (10th Cir. 2014), is misplaced. Defendants argue the case "illustrates the stringency with which the deliberate indifference standard is applied in the Tenth Circuit." ECF No. 19 at 8 (arguing sheriff's investigation into and response to sexual harassment, although deficient in many respects, was not deemed deliberately indifferent). That argument misapprehends the holding of *Kramer*. In *Kramer*, the court did not address whether the sheriff's conduct could be deemed deliberately indifferent. Instead, the court granted the sheriff qualified immunity because "there [were] no facts in this record giving rise to an inference that [sheriff] knew about [sergeant's] sexual harassment of [plaintiff]." *Id.* The sheriff could not be deemed to have known about and tolerated sexual harassment of which he was unaware. *Id.* In contrast here, Madison allegedly knew about prior incidents and received instructions aimed at reducing risks to pre-k students in her care.

Defendant's reliance on *Spencer v. Landrith*, 315 Fed. App'x 62, 65 (10th Cir. 2009), is also misplaced. In that case, the court held that a mayor and police chief who did not personally participate in arresting plaintiff could not be held individually liable for any § 1983 violation. *Id.* Additionally, they were not subject to supervisory liability under a "negligent supervision" theory, because merely being "in charge of other state actors who committed the violation" did not amount to a deliberate or intentional act. *Id.* (cleaned up). Here, Plaintiff seeks to hold Madison individually liable for her personal acts, which plausibly demonstrate an unreasonable refusal to

---

[5] In other § 1983 contexts, courts have held that failing to follow a policy or procedure does not, standing alone, amount to deliberate indifference by a state actor. *See Mercer v. Athens Cty., Ohio*, 72 F.4th 152, 162 (6th Cir. 2023) (addressing § 1983 claim based on nurse's alleged deliberate indifference to detainee's medical needs). Here, Plaintiff has alleged more than mere failure to follow a general policy or procedure. Plaintiff has alleged failure to follow a rule designed to mitigate risks flowing from the alleged harasser's conduct.

respond to known sexual harassment by another student. Plaintiff alleges Madison did more than merely be "in charge" of C.C. at the time of the alleged harassment, and the facts alleged are far afield from the type of "negligent supervision" addressed in *Spencer*.

### B. Clearly Established Right

A right is clearly established if a reasonable public official would have known that his or her challenged conduct was illegal. *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007). Generally, there must be a Supreme Court or Tenth Circuit decision on point, or weight of authority from other courts finding the law to be as plaintiff maintains. *Id.* A plaintiff need not find a case "presenting the exact fact situation at hand." *Murrell*, 186 F.3d at 1251. Instead, parties are required "to make reasonable applications of the prevailing law to their own circumstances." *Id.*

As early as 1999, the Tenth Circuit held that school employees exercising supervisory authority over students may be held individually liable for student-on-student sexual harassment under § 1983, "upon a showing of deliberate indifference to known sexual harassment." *Id.* at 1250. The court held that deliberate indifference can be shown where a teacher knows about sexual harassment and "acquiesce[s] in that conduct by refusing to reasonably respond to it." *Id.* Here, Madison was allegedly exercising supervisory authority over the alleged harasser and failed to follow direct instructions regarding the harasser. Depending on the development of facts in discovery, this conduct could be deemed deliberate indifference. Therefore, *Murrell*'s legal holding provides adequate notice that Madison's alleged conduct violates a clearly established right. *See Lameda as next friend of S.L. v. Indep. Sch. Dist. No. 29 of Cleveland Cty.*, No. CIV-21-119-D, 2021 WL 4302773, at *5 (W.D. Okla. Sept. 21, 2021) ("Given clear authority that school officials may not act with deliberate indifference to student-on-student sexual harassment, a § 1983 claim that satisfies the deliberate indifference standard should not be dismissed at the pleading stage based on an asserted defense of qualified immunity.") (rejecting argument that,

11

because alleged facts were less egregious than in *Murrell*, a reasonable official was not on notice that alleged indifference to student-on-student sexual harassment amounted to a constitutional violation); *Hart for J.M.*, 2009 WL 10706995, at *5 (relying on *Murrell* for finding a clearly established right) (reasoning that principal's response to report of sexual assault could be deemed "conscious acquiescence," "depending on facts unearthed in discovery to give context" to the allegations).

Defendant argues a reasonable official would not know that mere negligence, or negligent supervision, violates the constitutional right identified in *Murrell*.  ECF No. 19 at 19.  The Court rejects this argument for the same reasons already explained in Part III.A.  Specifically, the Court finds Plaintiff's allegations are sufficient to state a plausible claim of deliberate indifference rather than mere negligence.

## IV.     Substantive Due Process Claim – State-Created Danger

Plaintiff's allegations fail to state a claim for violation of Plaintiff's substantive due process rights.  Even construing the allegations in their most favorable light, Madison's conduct does not shock the judicial conscience.[6]

The Fourteenth Amendment prohibits a State from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1.  Normally, a state actor's failure to protect an individual from violent acts committed by a private party does not constitute a substantive due process violation.  *Hernandez v. Ridley*, 734 F.3d 1254, 1258 (10th Cir. 2013).  But there is an exception where the state actor created the danger that caused the plaintiff's harm. *Id.*  The "state-created danger theory indulges the legal fiction that an act of private violence may deprive the victim of [the Fourteenth Amendment's] constitutional guarantee." *Gray v. Univ. of*

---

[6] The Court does not reach whether the right was clearly established at the time of the violation.

*Colo. Hosp. Auth.*, 672 F.3d 909, 927 (10th Cir. 2012) (explaining history and contours of this narrow type of substantive due process claim). "Before the fiction may operate, however, a state actor must create the danger or render the victim more vulnerable to the danger that occasions the deprivation of life, liberty, or property." *Id.* "The danger that the state actor creates or enhances must be differentiated from the harm that the private party inflicts." *Id.* at 927-28.

To invoke the danger-creation exception, a plaintiff must establish two elements as a threshold matter: "(1) private violence, and (2) affirmative conduct on the part of the state in placing the plaintiff in danger." *Hernandez*, 734 F.3d at 1259. A plaintiff must also satisfy all elements of a six-part test:

> (1) the defendant created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) the defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) the defendant acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking.

*Id.* (cleaned up).

In their motion to dismiss, Defendants challenge Plaintiff's allegations regarding the "affirmative conduct" and "shocks the conscience" elements. Although Plaintiff adequately alleges affirmative conduct by Madison, dismissal is proper because the conduct cannot be deemed conscience-shocking.

### A.  Affirmative Conduct

Plaintiff has stated a plausible claim that Madison engaged in "affirmative conduct" that increased Plaintiff's vulnerability to the danger of Plaintiff suffering an assault by C.C. in a school bathroom.

Defendants argue the FAC merely alleges a negligent failure to monitor, rather than any affirmative conduct, by Madison. *See Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1173 (10th Cir.

13

2013) (explaining that failing to act "does not forfeit immunity when there is no affirmative action"). This is similar to Defendants' argument aimed at defeating the equal protection claim. As explained above in Part III.A, the allegations, taken together and construed favorably to Plaintiff, create a reasonable inference that Madison personally and affirmatively allowed C.C. and Plaintiff to simultaneously attend the bathroom without adult supervision. If borne out by discovery, this could amount to more than inaction and could instead amount to "affirmative conduct" by Madison that increased Plaintiff's vulnerability to a known risk of sexual assault by C.C. *See Sutton v. Utah State Sch. Bd. for the Deaf*, 173 F.3d 1226, 1239 (10th Cir. 1999) (explaining, in dicta, that teacher's aide who left her post as bathroom attendant while vulnerable student was in bathroom "affirmatively placed" the assaulted student in danger).

Defendants also argue that Madison's conduct was not "directly aimed" at Plaintiff, and therefore does not constitute affirmative conduct for purposes of a danger-creation claim. Defendants rely on two cases for this proposition. In *Ruiz v. McDonald*, 299 F.3d 1173, 1183 (10th Cir. 2002), the court held that the alleged improper licensure of a home daycare "affected the public at large," and was not sufficiently aimed at the deceased child who had been violently shaken by the owner of the facility. *Id.* at 1184. The court further reasoned that the threat posed by an improper licensure presented a threat of "an indefinite range and duration," rather than an immediate threat of harm for a definite duration. *Id.* at 1183.

In *Isaacs on behalf of Isaacs v. Konawa Public School District I-004*, No. CIV-20-358-KEW, 2021 WL 2668802 (E.D. Okla. June 29, 2021), the plaintiffs were students injured in a bus accident while on a school trip, and they sued the school district and bus driver. The plaintiffs asserted the district knew there was a shortage of bus drivers and chaperones for activity trips and yet failed to require chaperones on activity trips, placing all bus drivers in a position to be distracted drivers. *Id.* at *4. The plaintiffs also asserted the bus driver drove recklessly and was not properly

14

trained by the district.  The court held the defendants' actions were not affirmative conduct for purposes of a danger-creation claim, because (1) the conduct was not directly aimed at the two injured students, and (2) the school district's generally applicable policies posed a threat to the general student population rather than a specific student.

Madison's alleged conduct is distinguishable from the state action analyzed in *Ruiz* and *Isaacs*.  Both cases involved general decisions or policies that impacted large groups of people for an indefinite amount of time, such as all children who attend an improperly licensed daycare so long as it remains open, or all students who ride a bus while deficient bus policies are in place.  In contrast, Plaintiff alleges Madison knew of a specific risk in a particular location to a limited group of students for a discrete period – namely, other pre-k students in the restroom alone with C.C. while unsupervised.  Although Madison did not direct conduct to Plaintiff, Plaintiff was certainly "a member of a limited and specifically definable group" that Madison placed at risk by her alleged affirmative conduct.  *See Hernandez*, at 1259 (explaining, in regard to a plaintiff's status, that a plaintiff who suffered harm must be "a member of a limited and specifically definable group" at which the state actor directed conduct).

### B. Conscience-Shocking Conduct

Taken as true and construed favorably, the alleged conduct by Madison that increased Plaintiff's vulnerability to a risk of sexual assault by C.C. cannot be deemed conscience-shocking in the constitutional sense.

"The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges." *Hernandez*, 734 F.3d at 1261 (cleaned up).  Conduct that shocks the judicial conscience is "deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice." *Id.* (cleaned up).  "To show a defendant's conduct is

15

conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or employed it as an instrument of oppression." *Id.* (cleaned up). "The behavior complained of must be egregious and outrageous." *Id.* (cleaned up). This claim requires a high level of outrageousness because a substantive due process violation is more severe in degree than an ordinary tort. *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). In evaluating the "conscience-shocking" element of a § 1983 substantive due process claim, courts keep three principles in mind: (1) the need for restraint in defining the scope of substantive due process claims; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies' decisions on public safety. *Id.* at 573.

Whether conduct shocks the conscience is question of law for the court. *Perez v. Unified Gov't of Wyandotte Cty.*, 432 F.3d 1163, 1168 n.4 (10th Cir. 2005). At the dismissal stage, the question is whether the facts alleged, viewed in their totality and construed favorably to the plaintiff, shock the conscience in a Fourteenth Amendment substantive due process sense. *Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cty., Okla.*, 960 F. Supp. 2d 1254, 1262 (N.D. Okla. 2013).

Assuming Madison affirmatively allowed C.C. to attend the restroom unsupervised in violation of her instructions from Long, thereby increasing Plaintiff's vulnerability to harm, this still does not amount to "conscience-shocking" conduct in this case. First, although there had been prior incidents involving C.C., the risk that a pre-k student will sexually assault another pre-k student remains lesser in degree than risks posed by a more mature student "harasser." Second, although the prior incidents involving C.C. indicated risks of unwanted viewing or touching, such risks are not as severe as risks of death, rape, or more severe sexual assaults that, when ignored by state actors, are likely to shock the judicial conscience. Third, although Madison received an instruction about C.C.'s bathroom attendance, she did not witness the prior incidents and was not

involved in developing the rule to prevent harm. She was merely a substitute teacher asked to implement such rule. Fourth, Madison's alleged affirmative decision was not motivated by animus toward Plaintiff or desire to protect C.C. from suffering consequences. Finally, Madison took Plaintiff to the office after learning of the incident, rather than covering up the incident or otherwise protecting herself. Under these circumstances, Madison did not engage in egregious or outrageous conduct that created a magnitude of potential harm that shocks the judicial conscience. Further, there is no plausible basis for finding that Madison "arbitrarily abused" her authority as the substitute teacher or used such authority as an "instrument of oppression" against Plaintiff.

Case law within the Tenth Circuit supports the finding that Madison's alleged conduct, even if deemed deliberatively indifferent, affirmative conduct that increased a danger to Plaintiff, falls short of conscience-shocking. *See Liebson v. N.M. Corr. Dep't*, 73 F.3d 274, 277 (10th Cir. 1996) (granting motion to dismiss where state actors removed security officer from prison library and female librarian was raped by inmate, because this action was not deemed "egregious, outrageous, or fraught with unreasonable risk"); *Sutherlin*, 960 F. Supp. 2d at 1262–63 (granting motion to dismiss where state actor allegedly failed to stop beating of bullied student; condoned open physical assault of student; placed bullied student in "resource room" with other students who had bullied student in the past; failed to investigate bullies; and discouraged reporting of bulling). *Cf. Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1264 (10th Cir. 1998) (affirming denial of summary judgment where school counselor took mentally disabled teenager home, knowing he was suicidal and had access to firearms, and teen ultimately committed suicide); *K.A. as Next Friend of M.A. v. Bd. of Mosquero Mun. Sch.*, No. 1:20-CV-00997-DHU, 2023 WL 9240847, at *6 (D.N.M. Oct. 3, 2023) (denying summary judgment where school superintendent was found to "put students at serious risk of being sexually assaulted in order to protect his own son, failed to take any action to ensure his son would not continue his inappropriate

sexual behavior with other students, and then used his position of authority to direct others not to report his son's behavior").

## V.   Conclusion

Defendants' Amended Partial Motion to Dismiss and Combined Brief in Support (ECF No. 19) is **granted in part and denied in part**.

The motion is **denied** as to Plaintiff's § 1983 equal protection claim against Madison, which is alleged at ¶ 60 of Plaintiff's second cause of action.

The motion is **granted** as to Plaintiff's § 1983 substantive due process claim against Madison, which is alleged at ¶¶ 61-63 of Plaintiff's second cause of action. This § 1983 claim is hereby **dismissed with prejudice**.

The case is set for a status and scheduling conference on August 13, 2023, at 10:00 am, in courtroom 1.

**SO ORDERED** this 29th day of July, 2024.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**